45 N.J. Super. 31 (1957)
131 A.2d 409
CONDENSER SERVICE & ENGINEERING CO., INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, A CORPORATION OF MASSACHUSETTS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1957.
Decided April 26, 1957.
*34 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Maurice Schapira argued the cause for the appellant (Messrs. Schapira and Farkas, attorneys).
Mr. Frank Fink argued the cause for the respondent (Mr. James J. Carroll, attorney).
The opinion of the court was delivered by FRANCIS, J.A.D.
The issue on this appeal is whether, under circumstances to be detailed, plaintiff Condenser Service & Engineering Co., Inc. is entitled to invoke *35 the Declaratory Judgments Act, N.J.S. 2A:16-50 et seq. Where the act is applicable, the mode of presenting the problem to the court is regulated by the ordinary rules of civil practice. R.R. 4:92A. Pursuant thereto, a complaint was filed by plaintiff seeking a declaration of its rights under a comprehensive general liability insurance policy issued by the defendant American Mutual Liability Insurance Company. A motion to dismiss for failure to state a claim on which relief could be granted followed; included also was a motion for summary judgment. Affidavits were presented and considered by the court, after which an order was entered dismissing the complaint. See R.R. 4:12-2. No ground was stated except "due cause."
The complaint, affidavit of plaintiff's president and rather unusual verification by defense counsel of the factual statements contained in his memorandum to the trial court, reveal the questions submitted for determination. The plaintiff, whose principal office is in Hoboken, New Jersey, is in the heat engineering business. On June 1, 1951 the defendant insurance company issued its comprehensive general liability policy under which, for a period of a year, it agreed to "pay on behalf of [plaintiff] all sums which [it] shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident" arising out of plaintiff's business operations. The policy excluded from coverage "injury to or destruction of property * * * in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control." It provided also that the company would defend any suit brought against the plaintiff within the coverage "even if such suit is groundless, false or fraudulent."
On April 28, 1950 plaintiff entered into a contract with the United States under which it undertook to erect certain boilers at the Veterans' Administration Hospital, Livermore, California. The complaint alleges that plaintiff "did erect" the boilers and on October 6, 1951 an explosion occurred without fault on its part, which substantially destroyed *36 them. The supporting affidavit recites that the explosion damaged the boilers which "plaintiff had built."
Due notice of the accident and of the claim of the United States against the plaintiff for the damage to the boilers was given to the insurance company. However, the company disclaimed liability on the ground that the boilers were in the care, custody and control of plaintiff at the time of the explosion and therefore the policy provided no coverage for damage to them. After a long period of conferences and negotiations, on August 25, 1955 the United States advised plaintiff that suit was about to be instituted against it to recover the cost of repair. Plaintiff in turn forwarded the notification to defendant carrier which remained adamant in its denial of coverage.
(Subsequent to the disposition of the action at the trial level and pending the argument of this appeal, the suit was in fact instituted by the United States against plaintiff in the United States District Court for the District of New Jersey. A motion was then made to supplement the appendix to include this complaint. Therein the government charges that plaintiff contracted to install in one of the hospital buildings two new boilers, boiler foundations and equipment, extension of existing smoke breeching and removal and replacement of portions of the boiler room floor, in accordance with certain specifications. The work was to be completed by December 17, 1950, and "the completion date was thereafter extended to June 29, 1951." The further allegation is made that "on or about October 6, 1951, prior to the completion of the * * * contract work," an explosion occurred through the contractor's negligence as the result of which the boilers being installed under the contract were damaged. There is no specific allegation that at the time the boilers were in the care, custody or control of the contractor. The carrier's duty to defend the action depends upon the existence or non-existence of that fact when the explosion occurred, a problem which cannot and should not be decided on the record now before us. The test of such obligation to defend may *37 be found in Danek v. Hommer, 28 N.J. Super. 68 (App. Div. 1953), affirmed 15 N.J. 573 (1954); Annotation, 50 A.L.R.2d 458, 463, 469 (1956). We have concluded to grant the motion, but as will appear presently our decision would be the same if the government suit were still an active threat rather than an actuality.)
The relief sought in the plaintiff's complaint herein is a declaration: (a) "construing the provisions of the policy of insurance and determining the respective rights and liabilities of the plaintiff and defendant thereunder" with regard to the accident, (b) that defendant is obligated to assume the defense of any suits brought against the plaintiff on account of the explosion, (c) that defendant is liable to pay any judgments against plaintiff arising out of the explosion, and (d) that the carrier be directed to pay plaintiff's costs and counsel fees in this action.
On the motion, defendant admitted the denial of coverage, the disclaimer of liability and a refusal to assume the defense of the (then) prospective damage action by the United States against its assured. Likewise, its position with respect to the basic facts and the dispute with the assured as to coverage was described in this way:
"* * * The boilers were designated as No. 3 and No. 4 and on October 6, 1951, an explosion occurred in boiler No. 4 in building No. 6, when a Mr. A.W. Egan, an employee of the plaintiff, in applying a three-foot lighted torch, set off the explosion in question. Insofar as this phase of the situation is concerned, the plaintiff has claimed that at the time of the explosion, the boilers in question had been turned over to the United States Government, and the defendant has taken the position that that was not so at all; that the boilers were still going through a testing process, and it was an act of A.W. Egan, an employee of the plaintiff, which caused the ultimate destruction. The plaintiff reported the explosion to the defendant on October 16, 1951, and on November 7, 1951, the defendant denied coverage." (Emphasis added)
Against the background of this admitted controversy, the plaintiff by its complaint sought to have the court exercise its power under N.J.S. 2A:16-52 to "declare rights, status and other legal relations" by means of a declaration *38 that the boiler in question at the time of the explosion was not in the care, custody or control of the insured; that therefore the mishap was not excluded from the protection of the policy, and that the insurer was obliged to undertake the defense of the threatened action of the United States for damages charged to have resulted from the negligence of the insured in causing the explosion. Sections 53 and 54 (N.J.S. 2A:16-53, 54) have particular pertinency in support of the complaint. They authorize a person interested in a written contract, either before or after breach, to apply for the determination of any question of construction or validity thereof.
When a bona fide dispute exists between the parties, the broad remedial sweep of this statute as a modern adjunct of the judicial function has been recognized freely by our recent cases. National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., 21 N.J. 16 (1956); Utility Blade & Razor Co. v. Donovan, 33 N.J. Super. 566 (App. Div. 1955). And since the Utility Blade & Razor Co. decision, the Supreme Court, in the exercise of its rule-making authority, has eliminated one of the factors which formerly induced some judicial reluctance to permit full use of the mechanism. By R.R. 4:92A it ordained that the "existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."
No more fertile ground exists for the use of the declaratory judgment procedure than in the field of insurance, and the cases in which it has been employed throughout the country are legion. Maryland Casualty Co. v. Hubbard, 22 F. Supp. 697 (D.C.S.D. Cal. 1938) (collecting many cases); Annotation, 142 A.L.R. 8-76 (1943); 20 Appleman, Insurance Law and Practice, §§ 11351-11398 (1947); Borchard, Declaratory Judgments (2d ed. 1941), Chapter VI, pp. 634-655; "Developments in the Law, Declaratory Judgments," 62 Harv. L. Rev. 787, 850 (1949). Many examples may be found of the successful prosecution of such actions seeking a declaration of the existence or non-existence of coverage or with respect to the obligation *39 of the carrier to defend a pending or a relatively certain or imminent damage action against the assured. The criterion for appraising the availability of the relief is simple: Do the facts alleged, under all the circumstances, show that there is a substantial controversy between parties who have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment? Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Maryland Casualty Co. v. Morrison, 151 F.2d 772 (10 Cir. 1945), certiorari denied 327 U.S. 783, 66 S.Ct. 684, 90 L.Ed. 1010 (1946); Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F.2d 621, 142 A.L.R. 799 (10 Cir. 1942); Maryland Casualty Co. v. Tindall, 117 F.2d 905 (8 Cir. 1941); Central Surety & Ins. Corp. v. Norris, 103 F.2d 116 (5 Cir. 1939); United States Fidelity & Guaranty Co. v. Koch, 102 F.2d 288, 294 (3 Cir. 1939); C.E. Carnes & Co. v. Employers' Liab. Assur. Corp., 101 F.2d 739 (5 Cir. 1939); United States Fidelity & Guaranty Co. v. Pierson, 97 F.2d 560 (8 Cir. 1938); Central Surety & Ins. Corp. v. Caswell, 91 F.2d 607 (5 Cir. 1937); Maryland Casualty Co. v. Hubbard, supra; Travelers Ins. Co. v. Young, 18 F. Supp. 450 (D.C.D.N.J. 1937); Goldmann v. Lumber Mutual Cas. Ins. Co., 30 N.J. Super. 281 (Cty. Ct. 1954); Maryland Casualty Co. v. Martin, 88 N.H. 346, 189 A. 162 (Sup. Ct. 1937); Utica Mutual Ins. Co. v. Langevin, 87 N.H. 267, 177 A. 549 (Sup. Ct. 1935); American Motorists Ins. Co. v. Central Garage, 86 N.H. 362, 169 A. 121 (Sup. Ct. 1933); Citizens Cas. Co. of New York v. Clark, 245 App. Div. 38, 280 N.Y.S. 249 (App. Div. 1935); Post v. Metropolitan Cas. Ins. Co., 227 App. Div. 156, 237 N.Y.S. 64 (App. Div. 1929), affirmed 254 N.Y. 541, 173 N.E. 857 (App. Div. 1930); American Surety Co. v. Mariani (not officially reported), 121 N.Y.S.2d 194 (Sup. Ct. 1953); Travelers Indemnity Co. v. Burg, 253 App. Div. 43, 1 N.Y.S.2d 172 (App. Div. 1937); Annotation, 142 A.L.R., supra, 67-74; 20 Appleman, supra, § 11397; Borchard, supra, at 647. Although in the *40 great majority of instances the insurance carrier is the moving party, this fact is of no legal consequence. Cf. Maryland Casualty Co. v. Pacific Coal & Oil Co., supra.
Defendant insurance company has contracted to defend the plaintiff against actions arising from the risks covered, even if groundless; and to pay judgments resulting therefrom. It has refused to do so in the present situation, alleging that it has been relieved of such obligations by virtue of a controlling exclusion. The insured asserts that the policy protects against the claim being pressed. Defense of actions is frequently an expensive and burdensome matter. The premium paid by an assured is designed, in part at least, to relieve him of that burden. If the exclusion relied upon by defendant does not apply, then plaintiff is entitled to the full measure of protection contracted for and that includes defense of suits. And unless the coverage controversy can be resolved in advance of the trial of the negligence action, the advantage (already paid for) of having that litigation investigated and defended in the more experienced hands of the carrier and at its expense in the first instance, will be lost.
Thus it is plain that we are not treating with a hypothetical dispute or an abstract question. There is a concrete, contested issue, a definite assertion of legal rights and a positive denial of them; in short, a justiciable controversy. A declaratory judgment will settle the question of coverage between the parties and it will quiet their now uncertain jural relations. National-Ben Franklin Fire Ins. Co. v. Camden Trust Co., supra, 21 N.J., at page 24; United States Fidelity & Guaranty Co. v. Koch, supra; Aetna Casualty & Surety Co. v. Yeatts, 99 F.2d 665 (4 Cir. 1938); 20 Appleman, supra, § 11353, at 87; 62 Harv. L. Rev. 851. On the federal scene, it has been said that suits of this kind are to be encouraged as within the plain intendment of the Declaratory Judgments Act, 28 U.S.C.A. § 2201 (1950). Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra. And, of course, the existence of a factual dispute on the subject of care, custody or control of the *41 boiler is not a hindrance to the proceeding. N.J.S. 2A:16-58.
In support of the dismissal, defendant relies in part upon the "no action" clause of the policy  a common provision of such contracts. It says:
"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."
The basic purposes of this language are (1) to avoid joinder of the insurance company by the injured person in the damage action against the insured, and (2) to prevent suit against the carrier by the injured person or the insured until the damages have been fixed by final judgment after trial of that action or by proper agreement. See Viddish v. Hartford Accident & Indemnity Co., 41 N.J. Super. 221 (App. Div. 1956); Government Personnel Automobile Ass'n v. Haag (not officially reported), 131 S.W.2d 978 (Tex. Civ. App. 1939); Appleman, supra, § 4851. It was never intended to serve nor can it be construed to serve, the purpose of avoiding a declaration of rights when the insurer allegedly has repudiated the contract and declined to furnish an agreed defense of a covered damage action. To attribute such a significance to the restriction would be to render sterile the Declaratory Judgments Act in a substantial area of the insurance contract field. The great mass of cases in the annotations and texts, supra, have not even remotely indicated that the "no action" clause creates any obstacle to the form of proceeding. And see: Honetsky v. Russian Consolidated Mutual Aid Society of America, 114 N.J.L. 240, 241 (Sup. Ct. 1935); Maryland Casualty Co. v. Pacific Coal & Oil Co., supra; Pennsylvania Casualty Co. v. Upchurch, 139 F.2d 892 (5 Cir. 1943); Maryland Casualty Co. v. Tindall, supra; United States Fidelity & Guaranty Co. v. Pierson, supra; Maryland Casualty Co. *42 v. Hubbard, supra; Jesse E. Kahn, Inc., v. George E. Driscoll Co., 1 Misc.2d 405, 146 N.Y.S.2d 902 (Sup. Ct. 1955); Travelers Ins. Co. v. Young, supra; 20 Appleman, supra, § 11354.
Defendant contends further that the action does not lie because the United States is an indispensable party. No suggestion is made that the government has waived its sovereign immunity and consented to joinder as a defendant. The immunity is no less controlling in declaratory judgment actions. Empire Trust Co. v. Board of Commerce, etc., 124 N.J.L. 406 (Sup. Ct. 1940); Yeskel v. United States, 31 F. Supp. 956 (D.C.D.N.J. 1940); General Mutual Ins. Co. v. Coyle, 207 Misc. 362, 136 N.Y.S.2d 43 (Sup. Ct. 1954); Niagara Falls Power Co. v. White, 292 N.Y. 472, 55 N.E.2d 742 (Ct. App. 1944); Annotation, 163 A.L.R. 244, 246 (1946); 54 Am. Jur., United States, §§ 127, 128 (1945); 62 Harv. L. Rev., supra, at 821, 824. Assuming, therefore, without deciding, that ordinarily the government ought to be a party if complete relief is to be accorded, under the circumstances here a declaration of plaintiff's right to a defense of the claim (whether a suit is imminent or actually pending) should not be barred. R.R. 4:32-1, and see Tentative Draft comment on the original rule then designated 3:19-1. Recourse to the act will settle the policy dispute as to the parties in court. The declaration when granted will not prejudice nonparties. N.J.S. 2A:16-57; and see: Spiewok v. United States Casualty Co. (not officially reported), 34 N.Y.S.2d 63 (Sup. Ct. 1942); Maryland Casualty Co. v. Martin, supra; cf. Finley v. Factory, etc., Ins. Co. of America, 38 N.J. Super. 390 (Cty. Ct. 1955).
Finally, the suggestion is advanced that the trial court has discretion to accept or reject a declaratory judgment action and therefore the dismissal should not be disturbed. In connection with the exercise of discretion, it must be kept in mind that legislation providing for judgment of this type meets a real need in our present day society and should be liberally construed to accomplish the *43 purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes without involving coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships. So the remedy should not be denied lightly, and where a complaint discloses a justiciable controversy within the statute normally it ought to be entertained. If, in such case on account of circumstances made apparent to him, the trial court feels that the exercise of a judicial discretion warrants refusal to accept the proceeding, the reasons should be set out in the order or memorandum. Only in this way can an appellate tribunal evaluate the action. New York Foreign Trade Zone Operators, Inc., v. State Liquor Authority, 285 N.Y. 272, 34 N.E.2d 316 (Ct. App. 1941); 62 Harv. L. Rev., supra, at 817. The order involved here simply recites a dismissal for "due cause." As has been indicated, the dispute between these parties is ripe for a declaration of rights and in our opinion the complaint should not have been dismissed.
However, the relief prayed for is too broad. On the remand the issues to be determined as properly within the statutory ambit are:
(1) Was the boiler where the explosion took place in the care, custody or control of the plaintiff at the time of the occurrence?
(2) If not, is not the defendant obliged to undertake the defense of the damage claim of the United States?
Reversed and remanded.